

## LITIGATION FUNDING AGREEMENT

This Litigation Funding Agreement ("Agreement") is entered into this 1st day of _Nov., 2016, by and between Vicki Mize ("Claimant") and Litigation Management and Financial Services, LLC ("Company") (collectively referred to herein as "Parties") as follows:

### RECITALS

1. On July 26, 1990, the Americans with Disabilities Act ("ADA") was signed into law. The ADA is a comprehensive civil rights law prohibiting discrimination on the basis of disability.

   a. The ADA contains four sub-parts. The first three sections of the statute, Titles I, II, and III, bar discrimination on the basis of disability in different areas of public life. ADA Title III addresses disability discrimination in public accommodations, defined to include places of education including post-graduate private schools, and bars disability discrimination by "any person who owns, leases (or leases to), or operates a place of public accommodation." §§ 12181(7)(J), 12182. The enforcement provision of Title III, § 12188, incorporates the remedies of Title II of the Civil Rights Act, 42 U.S.C. § 2000a-3.

2. Title III of the ADA contains a list of general activities that it defines as discrimination: the denial of an opportunity to participate, 42 U.S.C. §§ 12182(b)(1)(A)(i), 12182(b)(1)(C); the provision of an unequal benefit, *id.* § 12182(b)(1)(A)(ii); and the provision of a separate benefit, unless doing so is necessary to provide a benefit that is as effective as that provided to others. *Id.* § 12182(b)(1)(A)(iii).[13]Furthermore, the statute requires benefits provided to people with disabilities to be afforded in the most integrated setting appropriate to the needs of the individual. *Id.* § 12182(b)(1)(B).

3. Title III of the ADA prohibits discrimination on the basis of disability by those who own or operate places of public accommodation. 42 U.S.C. § 12182(a). In enacting the ADA, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities." 42 U.S.C. § 12101(a)(2). The ADA's legislative history states that "[i]ntegration is fundamental to the purposes of the ADA. Provision of segregated accommodations and services relegate persons with disabilities to second-class citizen status." H. Rep. 101-485(III), 101st Cong., 2d Sess., at 56, *reprinted in* 1990 U.S.C.C.A.N. 445, 479. " '[T]he goal [is to] eradicat[e] the "invisibility of the handicapped." ' Separate-but-equal services do not accomplish this central goal and should be rejected." *Id.* at 50, 1990 U.S.C.C.A.N. at 473. The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' " *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 675, 121 S.Ct. 1879,149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p. 50 (1990),*reprinted in* 1990 U.S.C.C.A.N. 303, 332).

4. This integration mandate is found in two sections of the statute. Title III makes it discriminatory to provide individuals with disabilities "with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other

Litigation Funding Agreement

individuals, unless such action is necessary" to provide facilities, accommodations and the like that are as effective as those provided others. 42 U.S.C. § 12182(b)(1)(A)(iii). It also requires that "[g]oods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." *Id.*, § 12182(b)(1)(B).

5. Section 303 of the ADA required that all facilities designed and constructed after January 26, 1993 must be "readily accessible to and useable by" individuals with disabilities. 42 U.S.C. § 12183(a)(1). The statute further instructed the DOJ to adopt implementing standards and regulations. 42 U.S.C. § 12186(b). On July 26, 1991, the DOJ adopted the Americans with Disabilities Act Accessibility Guidelines as the 1991 Standards. 28 C.F.R. § 36.406(a) (1991). The 1991 Standards are now published as Appendix D to title 28, part 36 of the Code of Federal Regulations. On September 15, 2010, the DOJ amended its regulations and adopted the 2010 Standards.

6. The ADA also provides a private right of action for preventative relief, including an application for a permanent or temporary injunction or restraining order for 'any person who is being subjected to discrimination on the basis of disability in violation of' Title III." 42 USC §§ 12182(a)(1), 2000a-3(a)).

7. Virtually all individual States have passed legislation similar in intent and scope to the ADA.

8. Private enforcement suits are the primary method of obtaining relief under the ADA.

9. The Claimant wishes to pursue Claims including private rights of action against places of public accommodation with barriers to people with disabilities.

10. Claimant wishes to pursue Claims on their own behalf, but with the understanding that enforcement of Claims may cause compliance by places of public accommodation which may lead to the removal of barriers to other persons with disabilities who have not yet, or could not bring their own claims.

11. Claimant wishes to pursue the Claims. However, Claimant does not wish to carry the financial burden of the litigation, nor the risk associated with legal costs.

12. Company is not entitled to or obliged to provide legal advice to Claimant. The preparation and conduct of litigation which is funded by Company is the responsibility of the Claimant and the Claimant's lawyer.

**NOW, THEREFORE,** the Parties enter the following

## AGREEMENT

1. **Object and Limitations of Engagement:** This Agreement is limited to providing funding to Claimant and to Claimant's attorney for legal services. The Claimant does not wish to bear the litigation risk in pursing the Claims. For this reason, the Parties have agreed that

2 | Page

Litigation Funding Agreement

Company shall bear the costs so that Claimant may pursue the Claims. This cooperation commences on the date indicated above in this Agreement and ends once the Claims have been determined and the Proceeds have been distributed or this agreement is terminated by Company. If the Claims are successful, the Proceeds will be distributed in accordance with this Agreement.

## 2. Duties and Representations

a. The Claimant represents:

   i. that it has the full right, power and authority to pursue the Claims and that it has not sold, transferred, assigned, or otherwise disposed of its interest in the Claims;
   ii. there is no agreement with a third party preventing the Claimant from assigning the Claims or its financial interest in the Claims and the Claimant is free to assign Claims or financial interests without obtaining the consent of a third party;
   iii. the Claimant is not aware of any circumstances other than those listed in the recital above, which could affect the validity or enforceability of the Claims.
   iv. The documents which the Claimant has supplied, or will supply, provide a true, accurate and complete representation of the circumstances giving rise to the Claims;
   v. There is no other dispute between the Claimant and the Opponent, whether past, current, or future, which could have an impact on the Claims;
   vi. There are no enforceable judgment against the Claimant which may result in insolvency proceedings being commenced against the Claimant.

b. Claimant Duties

   i. Claimant shall carry out all appropriate and necessary acts which support the favorable determination of the Claims with reasonable care and will fully support the proceedings
   ii. Claimant shall obtain Company's consent in advance of incurring costs. The Claimant shall pass this obligation on to its lawyer.
   iii. Claimant shall obtain Company's consent before disposing of the Claims.
   iv. Claimant may only discontinue the Claims with the prior consent of Company.
   v. Claimant is obliged at the request of Company to pursue enforcement of any judgments obtained.
   vi. Claimant hereby releases its lawyer from any duties of confidentiality as concerns communication and disclosure between the lawyer and Company of information relating to the Claims.
   vii. Claimant shall inform Company promptly and on an ongoing basis via its lawyer on the status of proceedings and shall send to Company, promptly and without need for Company request, of new circumstances which have come to light and which have an impact on the assessment of the merits or the validity of the Claims or the legal risk. The Claimant shall pass on these obligations to its lawyer. The Claimant agrees to execute a separate power

Litigation Funding Agreement

> of attorney which shall entitle Company to request and view official and/or
> court documents.

c. Company Duties

   i. Company shall carry out a review free of charge to assess whether the
   Claims are capable of funding. Company shall not provide legal advice to
   Claimant. Company's review is purely for its own benefit and for the
   purposes of assessing the prospects of success of the Claims. Company is
   not obliged to justify its acceptance or rejection of any case.

   ii. Funding: Subject to the terms set out in this agreement, Company shall pay
   the costs of pursuing the Claims including costs of legal advice and
   representation, court fees, costs arising from a court order in relation to
   evidence and costs payable to the Opponent, providing the costs arise after
   this agreement comes into force. Costs of legal advice and representation
   must be pre-approved by Company including a review of Claimant's
   attorney-client agreement. Company shall make such payments for costs
   directly to Claimant's lawyer. The Claimant hereby authorizes its lawyer to
   accept receipt of the payments.

   iii. Subject to the terms set out in this agreement, Company shall pay to
   Claimant $50.00 for each of Claimant's claims that result in a filed
   complaint initiating a civil action. This advance of costs is not required to
   be repaid to Company and is to be kept by Claimant regardless of the
   outcome of the action

      1. Pay Schedule: Company shall pay to Claimant $20.00 for each of
      Claimant's claims that result in a filed complaint within twenty-one
      (21) calendar days of filing a complaint. Company shall thereafter
      pay Claimant $30.00 for each of Claimant's claims that result in a
      filed complaint within sixty (60) calendar days of filing a complaint.

   iv. Company shall not be obligated to pay Claimant's travel costs, transfer fees
   or other bank charges, costs arising from a set-off, or any other costs or fees
   not specifically outlined in this agreement.

   v. Company shall pay the prescribed costs of enforcing a judgment where
   Company deems enforcement to be necessary and to have sufficient
   prospects of success.

3. Distribution of Proceeds

   a. From the Proceeds of any successful Claims, Company shall first be entitled to
   deduct all costs which Company has already incurred and any costs which it has
   yet to pay in accordance with this Agreement.

   b. Claimant shall be entitled to all remaining Proceeds.

   c. Claimant hereunder acknowledges the existence of an attorney-client agreement.
   This Agreement, including this section discussing the distribution of Proceeds, shall

Litigation Funding Agreement

not supersede any promise of payment made between Claimant and his/her attorney.

d. Claimant hereunder fully consents and agrees for Company to pay to Claimant's attorney all or any portion of Claimant's promised fee to Claimant's attorney as agreed in Claimant's attorney-client agreement.

e. The term Proceeds shall include financial gains (including interest) which the Claimant's attorney is able to recover as a result of the court's or any other official judgment, a court approved or out-of-court settlement, or an admission by the Opponent. Proceeds, as described in this Agreement, shall only refer to monetary funds and shall not include causes of action for the Claimant's benefit, financial gain which is the result of being released from a claim, or the expiration of a claim against Claimant.

f. Each party shall be responsible for the taxation of its share of the Proceeds.

g. Company, in its judgment, is entitled to determine the date on which Proceeds are to be paid, but shall be paid no later than 60 days after Proceeds are in the control of Claimant, Claimant's agent, or Claimant's attorney.

h. The Claimant is obliged to provide information to Company, whether requested by Company or not, confirming the receipt, the nature and the value of any Proceeds, including any pecuniary advantage obtained as a result of the successful Claims funded by Company.

i. Payment of the Proceeds shall be made into the Claimant's lawyer's client account and shall remain held until the distribution of the Proceeds has been calculated and approved by Company. The Claimant shall require all Proceeds to be paid directly to its lawyer.

4. Assignment of Claims to Company as Security

a. The Claimant shall assign all Claims, rights to claim costs and all subsidiary rights to Company by way of security if at any point an assignment agreement is requested by Company

b. The Claimant shall, if so required by Company, execute a deed or other notarized document which gives effect to such assignment.

c. The Claimant shall, if so required by Company, execute and convey power of attorney to Company.

5. Confidentiality

a. All discussions between Company with Claimant, Company with Claimant's attorney, and any of Company's representative with any of Claimant's representatives, including this agreement are confidential and intended to remain confidential. Except as expressly permitted herein, The Parties agrees not to disclose the existence of this Agreement, any of its terms, or any other details learned while engaged with one another, to any person or entity not a party to this Agreement excepting the Parties' legal representatives. The Parties shall maintain in strict confidence any and all information disclosed. The Parties agree that if asked about directly, the Parties may state that they entered into a confidential agreement for litigation support.

6. Termination

a. Claimant shall only be entitled to terminate this agreement for good cause. The Parties agree that improved prospects of success in relation to the Claims or a

Litigation Funding Agreement

> change in Claimant's financial standing are not good causes. Death of Claimant shall not result in a termination of this agreement. All rights and obligations under this agreement shall pass to the Claimant's personal representatives.
> b. Following termination of this agreement by Claimant, Company, at its own risk and for its sole benefit may continue the proceedings without the participation of Claimant. Company shall be entitled to require Claimant to continue proceedings if Company does not wish to continue proceedings in its own name and if Company does not wish to disclose the fact that the proceedings are being funded. In this case, Company will indemnify Claimant for all legal costs associated with the proceedings and the Proceeds shall be paid in full to Company.
> c. Company has taken on the legal costs risks known as of the date of this Agreement. In the event that new circumstances come to light or are brought to Company's attention for the first time, and as a result of such circumstances the prospect of success are lower than at the time of entering into this agreement, Company shall be entitled to terminate this agreement in whole or in part without notice and to cease any further funding of Claimant's Claims.
> d. In any event, Company shall be entitled to terminate this Agreement in whole or in part at the conclusion of proceedings at each instance and to cease funding from that point onwards.
> e. In the event of termination of this agreement by Company, Company shall pay the costs incurred to the date of termination and which apply to discontinue the Claims or part of the Claims immediately and most cost-effectively. The Claimant shall be entitled to continue with the proceedings to pursue the Claims at its own costs. In the event that the Claimant succeeds, the Claimant shall reimburse Company for all costs incurred by Company.
> f. Company shall release or return any such securities as have been provided to Company once Company has no further interest in or reason to require a security.

7. **Settlement**
   a. Claimant affirms that it has had full and lengthy opportunity to discuss with Company the options for and likelihood of settlement of Claims. Claimant believes that settlement of Claims gives the greatest chance that defendants will comply with the ADA.
   b. Claimant therefore gives Company full and complete authorization to negotiate and accept any settlements of Claims. Claimant agrees to cooperate and consent to any settlement deemed reasonably by Company.
   c. Claimant agrees to direct his/her attorney to settle Claims as directed by Company if so directed.
   d. Claimant and Company jointly reaffirm their mutual goal to bring about ADA compliance through the filing of complaints asserting Claimant's Claims, and entering into settlement agreements with covenants to rectify ADA violations.

8. **Dispute Resolution**
   a. In the event of disagreement arising during the negotiation, execution or performance of this agreement, the Parties shall first attempt to find an amicable solution by submitting a notice of dispute in writing.
   b. If the Parties are unable to find an amicable solution within 30 days of a notice of dispute, the Parties agree to submit to a private and confidential mediation and

Litigation Funding Agreement

shall mediate the matter no later than 120 days after the date of the notice of dispute.

c. If the Parties are unable to successfully mediate any dispute the parties agree to submit any claims or causes of action to private binding arbitration.

d. Each party shall bear their own costs at mediation and shall share the costs of the mediator.

e. If arbitration is necessary, the successful party shall be entitled to recover from the losing party its costs, fees, and expenses related to the arbitration.

9. **Miscellaneous**

a. This agreement constitutes the entire Agreement between the parties and supersedes and terminates any previous agreements whether written or oral. Any modification or variation to this Agreement must be in writing.

b. If any portion of this agreement is found to be void or unenforceable or a provision of the Agreement is missing, the remaining provisions of this Agreement shall continue in full force and effect.

c. The Parties agree that this agreement shall be governed by Arizona law with venue of any dispute resolution proceeding to take place in the state and county in which Claimant resides at the time the Agreement was executed.

**The parties have executed this Agreement as of the date first written above.**

Name:_____

Name: Vicki Mize

**On behalf of Litigation Management**

**and Financial Services, LLC**

7 | Page