ⅠƆ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00915-NYW

VICKI MIZE, an individual, on her own behalf,

    Plaintiff,

v.

KAI, INC., d/b/a Sa Wa Ra,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendant Kai, Inc.'s ("Defendant" or "Kai") Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and Memorandum in Support Thereof ("Motion to Dismiss" or "Motion"). [#17, filed June 14, 2017]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated May 30, 2017 [#13]. Having reviewed the Motion and associated briefing, the entire docket, and the applicable case law, the court respectfully DENIES the Motion for the reasons stated herein.

## BACKGROUND

Plaintiff Vicki Mize ("Plaintiff" or "Ms. Mize") initiated this action by filing her Complaint, pursuant to the Americans with Disabilities Act ("ADA" or "Act"), 42 U.S.C. § 12101 *et seq.*, with the United States District Court for the District of Colorado on April 14, 2017.[1] [#1]. Ms. Mize "is an individual with disabilities which substantially limits major life activities." [*Id.* at ¶ 7]. Because of her disabilities, Ms. Mize depends on the use of a wheelchair

---

[1] To date, Ms. Mize has filed approximately seventy-three (73) identical lawsuits in this District against various Defendants.

for her mobility; accordingly, she qualifies for and requires "reasonable accommodations to access and use" places of public accommodation ("PPA"). [*Id.*]. Defendant owns and/or operates one such PPA in Castle Rock, Colorado. [*Id.* at ¶ 1].

On November 29, 2016, Plaintiff allegedly visited Defendant's PPA to enjoy its offered goods and services; however, Plaintiff "was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities." [*Id.* at ¶¶ 8–9, 31–32, 41]. Specifically, Kai failed to: (1) "provide a parking space identified with a sign that includes the International Symbol of Accessibility" ("Violation I"); (2) "provide accessible parking space identification signs 60 inches (1525mm) above the finish floor or ground surface" ("Violation II"); (3) "provide signs containing the designation 'van accessible' that identify van parking spaces" ("Violation III"); (4) "locate mirrors over lavatories and countertops with the bottom edge of the reflecting surface no greater than 40 inches (1015 mm) above the ground" ("Violation IV"); and (5) "provide a toilet with a seat height between 17 inches (430 mm) minimum and 19 inches (485 mm) maximum above the floor as required" ("Violation V"). [*Id.* at ¶¶ 32a–e]. Plaintiff alleges that members of the public who do not suffer from physical disabilities can utilize Kai's PPA without any restrictions. [*Id.* at ¶ 9]. Plaintiff continues that, "should Defendant modify its PPA to accommodate her disabilities, she intends to avail herself of the goods and services offered at the PPA in the future." [*Id.* at ¶ 10].

Plaintiff asserts that Defendant has violated Title III of the ADA by discriminating against patrons with disabilities similar to Plaintiff. *See* [*id.* at ¶¶ 34–36, 38–41]; *see also* 42 U.S.C. § 12182(a). Plaintiff seeks declaratory relief; injunctive relief in the form of a preliminary and permanent injunction requiring Kai to remove all barriers to the use of its PPA

by persons with disabilities and ordering Kai to undertake the necessary alterations to make its PPA accessible to individuals with disabilities; as well as attorney's fees and costs. [*Id.* at 8].

Defendant filed the instant Motion on June 14, 2017. [#17]. Defendant seeks dismissal of Plaintiff's Complaint in its entirety because Plaintiff's claims are moot, as Kai completed remedial measures to ensure compliance with the Act, and Plaintiff's claims are either false or brought against the wrong person and/or entity. [*Id.* at 1–2]. Plaintiff filed a Response and Defendant a Reply. [#21; #22]. Upon receipt of Defendant's Reply, the court permitted Ms. Mize to file a sur-reply to address the new issues raised by Defendant in its Reply, as well as to help guide the court's determination as to whether the Motion to Dismiss should be converted to one for summary judgment. [#23]. Plaintiff filed her Sur-Reply on August 18, 2017. [#27].[2] Upon review of the Parties' briefs and the applicable case law, this court determines that oral argument would not materially assist in the resolution of the instant motion.

## LEGAL STANDARDS

I. **Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter

---

[2] The court may convert a motion to dismiss to one for summary judgment when a party submits material beyond the pleadings, so long as the court provides the parties with notice so that all factual allegations may be met with countervailing evidence. *See* Fed.R.Civ.P. 12(d); *Price v. Philpot,* 420 F.3d 1158, 1167 (10th Cir. 2005). Because Defendant referred to matters outside the pleading, this court issued a Minute Order dated July 26, 2017, notifying the Parties that it was considering converting the instant Motion to Dismiss into one for summary judgment and permitting Plaintiff to file a sur-reply. [#23]. That sur-reply was filed on August 18, 2017. [#27]. The conversion process, however, is not automatic. Rather, the decision whether to convert a motion to dismiss to one for summary judgment is reserved to the court's discretion. *See Humood v. City of Aurora,* No. 12–cv–02185–RM–CBS, 2014 WL 4345410, at *5 (D. Colo. Aug. 28, 2014). In reviewing the record before it, this court finds that it is more appropriate to consider the instant motion as a motion to dismiss, rather than to convert it to one for summary judgment.

3

jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See generally Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack, the court takes the allegations in the Complaint as true; however, when reviewing a factual attack, the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

**II.   Mootness**

Mootness is a threshold issue as federal court jurisdiction depends on a live case or controversy—without a live, concrete controversy, the court cannot consider the plaintiff's claim(s) no matter how meritorious. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (internal quotations omitted) (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013)). Thus, the inquiry focuses on whether the court's determination of the

issues will have "some effect in the real world." *Wyoming v. U.S. Dep't of Argic.*, 41 F.3d 1207, 1212 (10th Cir. 2005) (internal quotations and citation omitted).

However, there is an exception to mootness when the defendant voluntarily ceases the challenged conduct for purposes of evading judicial review, but is free to continue the challenged conduct once the court dismisses the case as moot. *Brown*, 822 F.3d at 1166. The *defendant* bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotations omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

## ANALYSIS

I.   **Mootness under Title III of the ADA**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). For violations of Title III, a plaintiff may seek prospective injunctive relief only; monetary damages are unavailable. *See Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010); *accord A.R. v. Kogan*, 964 F. Supp. 269, 271 (N.D. Ill. 1997) (explaining that relief under Title III is "specifically limited to providing injunctive relief and *not* damages" (emphasis in original)). And, as with any case before a federal court, the existence of a live case or controversy must exist at all stages of litigation. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015). "When a party seeks only equitable relief, as here, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). In other words, "a claim for prospective

5

injunction becomes moot once the event to be enjoined has come and gone." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014).

Kai moves to dismiss Plaintiff's Complaint because the alleged ADA violations, *see* [#1 at ¶¶ 32a–e], are all moot. [#17 at 2]. For example, Kai avers that the landlord[3] of the commercial space where its restaurant is located has already remediated Violations I–III by posting the requisite signs identifying spaces as handicap accessible and "van accessible," which are 61 ¾ inches from ground. *See* [*id.* at 2, 7–8; #22 at 3–6]; *see also* [#17-2; #17-3]. Further, as to Violation IV, Kai asserts that it has installed floor length mirrors in each of its restrooms so that the bottom of the reflective surface is no greater than 40 inches above the ground. [#17 at 2–3, 7; #17-4; #22 at 5]. Further still, Kai argues that Violation V, regarding the height of its toilet seats, is false given that, when measured with the toilet seat down, the toilets are compliant with the applicable height requirements. *See* [#17 at 3, 8–9; #17-5; #17-6; #22 at 4, 6]. According to Kai, Plaintiff's request for injunctive relief is moot, as all alleged ADA violations have been remediated.

Plaintiff responds that her claims are not moot because Kai has not met its heavy burden of establishing that these ADA violations are not likely to recur. [#21 at 6–7; #27 at 1–2, 7, 8, 9–12]. This is because the only evidence provided to the court are pictures of the alleged remediation and Defendant's conclusory assertions that these violations have been permanently remediated. *See* [#27 at 8, 9–10]. According to Plaintiff, Kai could easily continue its

---

[3] To the extent Kai seeks to dismiss Plaintiff's claim because it does not own the parking lot at issue, this argument goes to the merits of Plaintiff's claims, which is not before the court on the instant Motion. Kai may reassert this theory on a properly filed motion for summary judgment. Nonetheless, Kai continues that this fact does not affect its argument that Plaintiff's claims are moot. Thus, the court considers only Kai's mootness argument as to these violations.

discriminatory conduct in the future. [#21 at 6–7; #27 at 1–2, 7, 8, 9–12]. Based on the record before it, the court respectfully agrees.

As explained, "[i]t is well settled that voluntary cessation of illegal conduct by itself does not make the case moot." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997) ("Defendant's voluntary suspension of its unlawful policy did not completely remove the threat of injury"). For voluntary cessation to moot Ms. Mize's ADA claim, Kai must demonstrate that (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) (citations and internal quotation marks omitted). Indeed, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005). In other words, if a defendant's minor temporary changes to its establishment rendered an ADA claim moot, this would permit the defendant to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, LLC*, 568 U.S. at 91.

Here, the only evidence Defendant provides are several pictures of the alleged remediation, to which it argues clearly establishes that Plaintiff's ADA claim is moot. *See* [#17-2 through #17-6]; *see also* [#22 at 3 ("Defendant has provided photographs of the voluntary and permanent remediation . . . to ensure compliance with the ADA.")]. Kai contends that the work completed "is permanent, making it clear that the allegedly wrongful behavior could not reasonably be expected to recur," [#17 at 8]; that its "voluntary and permanent remediation"

7

moots this lawsuit and deprives the court of subject matter jurisdiction, [#22 at 3]; and that it "is nonsensical to suggest that despite Defendant's clear desire and interest to bring [its] business into compliance, Defendant would immediately undo the remediation . . . thereby opening [itself] up to future lawsuits[,]" [*id.* at 5].

The court agrees with Ms. Mize, however, that Defendant fails, at this juncture, to satisfy its "formidable burden" that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (citation and quotation marks omitted). That is, it is unclear from the proffered pictures and Kai's own conclusory assertions, that its remedial work is truly permanent. Kai proffers no testimonial evidence authenticating the pictures or the work performed, no expert opinions as to the nature of the work performed and its compliance with the ADA, and, as Plaintiff notes, there is no evidence that Defendant has implemented policies or procedures to ensure that it remains complaint with the ADA moving forward. Based on the record before the court, it cannot conclude that Defendant has affirmatively established that the ADA violations will not recur. *See Equal Emp't Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173–74 (10th Cir. 2017).

Additionally, as the briefs make clear, there are contested factual issues regarding the court's subject matter jurisdiction. Under such circumstances, "either party should be allowed discovery on the factual issues" raised by a Rule 12(b)(1) motion, *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002), and, although this court has discretion in how to resolve jurisdictional challenges, "a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant," *id.* At this stage, the court concludes that the more prudent course is to allow discovery to proceed on these issues such that the Parties

can better support their positions at summary judgment. This is also true of Kai's arguments regarding Violation V, i.e., the height of its toilet seats. It is unclear how Defendant's argument—that its toilet seats comply with the ADA—demonstrates that Plaintiff's claim is moot, as there appears to be a dispute about the proper legal interpretation of the ADA regulations concerning the proper height of toilet seats. Plaintiff maintains that Defendant's toilet seats are too low and Defendant contends just the opposite. This does not go to the court's subject matter jurisdiction but, rather, to the merits of Plaintiff's claim. Such an argument is better suited for a properly filed summary judgment motion. *See Frederick v. Coffee House Holdings, Inc.*, No. 17-cv-00409-MEH, 2017 WL 3390557, at *3 (D. Colo. Aug. 8, 2017) ("Defendant's contention that its floor has always complied with the ADA does not challenge this Court's jurisdiction; rather, it demonstrates a dispute on the merits of Plaintiff's claim."). Because it is clear that Defendant has made no permanent adjustments to its toilet seats, Plaintiff's claim is not moot. For this reason and those above, Kai's Motion to Dismiss on mootness grounds is DENIED.

II.     **Exhaustion under Title III of the ADA**

For the first time in its Reply, Defendant moves to dismiss Plaintiff's Complaint because Plaintiff failed to exhaust her state administrative remedies. [#22 at 9]. That is, prior to filing suit, Ms. Mize was required to give notice to the Colorado Civil Rights Division ("CCRD") of the alleged discrimination at Kai's PPA. [*Id.* at 10]. Plaintiff counters that there is no such requirement, as there is a split among courts, including within this District, but that a majority of courts have concluded that no exhaustion requirement applies. [#27 at 3–7]. For the following reasons, the court respectfully agrees with Plaintiff.

9

To begin, there is a recognized split among courts that have addressed this issue. *Compare Lillard v. Sunflower Farmers Mkt., Inc.*, No. 12-cv-1497-JLK, 2012 WL 5936543, at *1 (D. Colo. Nov. 27, 2012) (holding that Title III of the ADA, 42 U.S.C. § 12188, incorporates Title VII of the Civil Rights Act's notice requirement under 42 U.S.C. § 2000a-3(c), thereby requiring Title III plaintiffs to provide notice to state or local authorities prior to filing suit in federal court); *Snyder v. San Diego Flowers*, 21 F. Supp. 2d 1207, 1208–11 (S.D. Cal. 1998) (same); *Mayes v. Allison*, 983 F. Supp. 923, 924–25 (D. Nev. 1997) (same) *with Botosan v. Paul McNally Realty*, 216 F.3d 827, 831–32 (9th Cir. 2000) (holding that the clear and unambiguous statutory language of 42 U.S.C. § 12188(a)(1) does not incorporate the notice requirement of 42 U.S.C. § 2000a-3(c) (collecting cases)); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 123 (N.D.N.Y. 2000) (same); *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1076–77 (D. Haw. 2000) (same); *Guzman v. Denny's Inc.*, 40 F. Supp. 2d 930, 934 (S.D. Ohio 1999) (same); *Moyer v. Showboat Casino Hotel*, 56 F. Supp. 2d 498, 501 (D.N.J. 1999) (same); *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1049–50 (S.D. Cal. 1998) (same); *Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at *10 (S.D.N.Y. Apr. 2, 2003) (same). Indeed, there is even a split among courts in this District. *Compare Jones v. Reg'l Transp. Dist.*, 2010 WL 3341205, at *2 (D. Colo. Aug. 23, 2010) (holding that the plaintiff must give notice to the CCRD prior to filing a Title III claim) *with Abreu v. Tavin Foods, Inc.*, No. 16-cv-00432-MEH (D. Colo. Nov. 14, 2016) [ECF No. 44 at 10 (holding that there is no exhaustion requirement under Title III)] (attached as Ex. A).

In support of its argument, Defendant relies on *Howard v. Cherry Hills Cutters, Incorporated* ("*Howard I*"), wherein the Honorable John L. Kane held, "By making § 2000a-3 applicable to enforcement actions under 42 U.S.C. § 12188, Congress has imposed a state law

10

exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA." 935 F. Supp. 1148, 1150 (D. Colo. 1996). Senior Judge Kane reaffirmed this holding in *Howard v. Cherry Hills Cutters, Incorporated* ("*Howard II*"), 979 F. Supp. 1307, 1308–09 (D. Colo. 1997), noting that § 12188(a) of Title III incorporates the "remedies and procedures set forth in [§] 2000a-3(a) of [Title VII of the Civil Rights Act]," and because § 2000a-3(a) is limited by the notice requirements in § 2000a-3(c), Title III requires notice to state or local authorities prior to filing suit. Then, in *Lillard v. Sunflower Farmers Market, Incorporated*, Senior Judge Kane further explained:

> Section 2000a–3(a) sets forth the *remedies* and authorizes aggrieved parties to commence a civil action for injunctive relief. Section 2000a-3(c) sets forth the *procedure* for commencing a civil action and imposes a pre-suit notice requirement on claims for relief under § 2000a-3.
>
> If Congress intended only to incorporate the Civil Rights Act's remedies, and not procedures, it would have excluded the word "procedures" from 42 U.S.C. § 12188. Accordingly, § 2000a-3(a) is, in turn, limited by the notification requirement of § 2000a-3(c), which provides, in cases where state or local law also prohibit the discriminatory acts or practices alleged, that individuals provide written notice to the appropriate state or local authorities at least 20 days before filing suit in federal court.

2012 WL 5936543, at *1. Respectfully, this court's statutory interpretation leads to a different conclusion and is consistent with analogous determinations by the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") and other circuits.

Section 12188(a)(1) provides, "The remedies and procedures set forth in section 2000a-3*(a)* of [Title VII of the Civil Rights Act] are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of [Title III of the ADA] . . . ." 42 U.S.C. § 12188(a)(1) (emphasis added). When interpreting a statute, the court begins its inquiry with the language of the statute itself—if the statute's language is plain and unambiguous, the court's function is to enforce it as written. *See*

11

*In re Cowen*, 849 F.3d 943, 949 (10th Cir. 2017). This is true "unless the plain language would 'produce a result demonstrably at odds with the intention of its drafters[.]'" *United States v. Dahda*, 853 F.3d 1101, 1113 (10th Cir. 2017) (quoting *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 820 (10th Cir. 1995)).

The court concludes that the plain language of § 12188(a)(1) is clear and unambiguous—it incorporates *only* § 2000a-3(a), not the *entirety* of § 2000a-3. *See Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 1997 WL 33471624, at *2–6 (D. Colo. Mar. 3, 1997) ("[T]he ADA does not, by its express terms, incorporate the portions of the Civil Rights Act of 1964 that require exhaustion of administrative remedies."); *cf. McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (holding that Title III does not require exhaustion of EEOC administrative remedies, because Title III incorporates only 42 U.S.C. § 2000a-3(a), not § 2000e-5). "To hold the entirety of § 2000a-3 is adopted is to impermissibly render superfluous the explicit textual reference to § 2000(a)-3(a) [sic]." *Guzman*, 40 F. Supp. 2d at 934. Indeed, there is no mention of § 2000a-3(c) in § 12188(a)(1), and there is no basis in the legislative history or otherwise to implicitly incorporate § 2000a-3(c). *Botosan*, 216 F.3d at 832 ("[T]he statute's legislative history, the Code of Federal Regulations, *see* 28 C.F.R. § 26.501(a), and the Department of Justice's Technical Assistance Manual generally support the conclusion that Title III actions do not require state notification."). Consistent with the cannon of statutory construction *expression unius est exclusion alterius*—to "express or include one thing implies the exclusion of the other, or the alternative," *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003)—the court concludes the inclusion of § 2000a-3(a) only indicates that no state

exhaustion requirement under § 2000a-3(c) applies to Title III claims.[4] *See, e.g., Frederick v. Coffee House Holdings, Inc.*, No. 17-cv-00409-MEH, 2017 U.S. Dist. LEXIS 75857, at *13 (D. Colo. May 11, 2017) (holding that "a Title III disability claimant need not exhaust administrative remedies before filing a lawsuit."); *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 54 (3d Cir. 2003) (unpublished) ("Title III does not require the exhaustion of state remedies"); *Iverson v. Comsage, Inc.*, 132 F. Supp. 2d 52, 56 (D. Mass. 2001) (holding that § 12188(a)(1) is "plain on its face" in not requiring exhaustion of state administrative remedies); *Walker v. Asmar Ctr., LLC*, No. 11-11745, 2011 WL 5822394, at *6 (E.D. Mich. Nov. 15, 2011) (holding that the Title III plaintiff "is not required to exhaust any administrative remedies before filing suit."). Accordingly, Kai's Motion to Dismiss on exhaustion grounds is DENIED.

### III.   Costs and Fees

Defendant also moves for costs and fees, asserting that Plaintiff's claims are frivolous, groundless, or brought in bad faith. *See* [#17 at 9–13; #22 at 8–9, 11]. However, in light of the court's conclusions above, the court DENIES without prejudice Kai's request for fees and costs, as the court cannot presently conclude, based on the current record, that Plaintiff's claims are frivolous, groundless, or brought in bad faith.

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant Kai, Inc.'s Motion to Dismiss [#17] is **DENIED**.

---

[4] Though the United States Court of Appeals for the Tenth Circuit has not addressed this issue, it has held that Title II of the ADA lacks any requirement that a plaintiff exhaust her Equal Employment Opportunity Commission ("EEOC") administrative remedies prior to bringing suit. *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1309 (10th Cir. 2012); *accord Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016) (holding the EEOC exhaustion requirement under Title I of the ADA does not apply to Titles II or III).

DATED: November 9, 2017	BY THE COURT:

                                              s/Nina Y. Wang_____
                                              Nina Y. Wang
                                              United States Magistrate Judge