IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00915-NYW

VICKI MIZE, an individual, on her own behalf,

    Plaintiff,

v.

KAI, INC., d/b/a Sa Wa Ra,

    Defendant.

## ORDER ON DISCOVERY MOTIONS

Magistrate Judge Nina Y. Wang

This matter is before the court on two discovery motions:

(1) Plaintiff's Motion to Quash Subpoena Duces Tecum ("Motion for Protective Order")[1] [#31, filed December 19, 2017]; and

(2) Defendant Kai, Inc.'s ("Defendant" or "Kai") Motion for Sanctions, Pursuant to F.R.C.P. 37(d) ("Motion for Sanctions") [#32, filed December 20, 2017].

The undersigned considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated May 30, 2017 [#13]. The court entertained oral argument by the Parties on January 17, 2018 [#34]. Having reviewed the Motions and associated briefing, the entire docket, and the applicable case law, the court respectfully DENIES the Motion for Protective Order and GRANTS IN PART and DENIES IN PART the Motion for Sanctions for the reasons stated herein.

---

[1] Though styled as a motion to quash a subpoena, there is no subpoena directed at Ms. Mize in this action. Rather, Defendant directed a Notice of Deposition to Ms. Mize pursuant to Rule 30 of the Federal Rules of Civil Procedure. Accordingly, this court analyzes the issues under Rules 26 and 37 of the Federal Rules of Civil Procedure, rather than Rule 45 invoked by Plaintiff.

## BACKGROUND

The court has previously discussed the background of this matter in detail [#28] and, therefore, will focus only on the facts most pertinent to the instant Motions. Plaintiff Vicki Mize ("Plaintiff" or "Ms. Mize") initiated this action by filing her Complaint, pursuant to the Americans with Disabilities Act ("ADA" or "Act"), 42 U.S.C. § 12101 *et seq.*, with the United States District Court for the District of Colorado on April 14, 2017.[2] [#1]. Ms. Mize "is an individual with disabilities which substantially limits major life activities." [*Id.* at ¶ 7]. Because of her disabilities, Ms. Mize depends on the use of a wheelchair for her mobility; accordingly, she qualifies for and requires "reasonable accommodations to access and use" places of public accommodation ("PPA"). [*Id.*]. Defendant owns and/or operates one such PPA in Castle Rock, Colorado. [*Id.* at ¶ 1].

On November 29, 2016, Plaintiff allegedly visited Defendant's PPA to enjoy its offered goods and services; however, Plaintiff "was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities." [*Id.* at ¶¶ 8–9, 31–32, 41]. Plaintiff alleges that members of the public who do not suffer from physical disabilities can utilize Kai's PPA without any restrictions. [*Id.* at ¶ 9]. Plaintiff asserts that Defendant has violated Title III of the ADA by discriminating against patrons with disabilities similar to Plaintiff. *See* [*id.* at ¶¶ 34–36, 38–41]; *see also* 42 U.S.C. § 12182(a). Plaintiff seeks declaratory relief; injunctive relief in the form of a preliminary and permanent injunction requiring Kai to remove all barriers to the use of its PPA by persons with disabilities and ordering Kai to undertake the necessary alterations to make its PPA accessible to individuals with disabilities; as well as attorney's fees and costs. [*Id.* at 8].

---

[2] To date, Ms. Mize has filed approximately seventy-three (73) identical lawsuits in this District against various Defendants.

On June 8, 2017, this court entered a Scheduling Order in this case that set forth the claims asserted by Plaintiff and contemplated the deposition of Ms. Mize. [#16 at 2, 7]. On November 29, 2017, Defendant noticed the deposition of Ms. Mize for December 20, 2017, at the offices of the Boulder County Bar Association. [#32 at 1]. On December 11, 2017, Plaintiff's counsel requested that the location of the deposition be moved to Castle Rock, Colorado, due to Plaintiff's medical condition. [*Id.*]. Defendant agreed, served an Amended Notice of Deposition, and reserved a space and court reporter for Castle Rock. [*Id.* at 2].

On December 20, 2017, approximately 30 minutes prior to the start of the deposition, Plaintiff's counsel informed Defendant that Ms. Mize was experiencing distress over appearing for the deposition and, approximately 20 minutes later, informed Defendant that Ms. Mize was contemplating going to the hospital. [*Id.* at 3–4]. Around 1:10 p.m., counsel for Ms. Mize advised defense counsel that Ms. Mize would not appear for the scheduled deposition. [*Id.* at 4]. At the hearing on January 17, 2018, Plaintiff's counsel responded to this court's inquiry that Ms. Mize had not, in fact, sought any medical treatment on December 20, 2017. The Parties also disputed whether Ms. Mize had offered to dismiss her lawsuit against Defendant and whether Plaintiff's counsel had informed defense counsel that Ms. Mize refused to appear for a deposition at any time.

Defendant also contends that Ms. Mize failed to appropriately respond to written discovery and produce requested documents. [#32 at 2–3]. The Parties and the court discussed the written discovery issues during the January 17 Status Conference, in lieu of Defendant filing a formal motion to compel. Defendant challenged Ms. Mize's invocation of the attorney-client privilege and work product doctrine. [#34]. Defendant also challenged Ms. Mize's refusal to

produce documents related to Litigation Management and Financial Services ("Litigation Management") based on the attorney-client privilege or work product doctrine.

At the hearing, Plaintiff's counsel offered an Affidavit from Ms. Mize, explaining her medical condition and the circumstances surrounding her nonappearance on December 20. [#34-7]. Ms. Mize also submitted the documents reflected on her privilege log for the court's *in camera* review. *See* [#34-1 through #34-6]. This court also permitted the Parties to submit additional briefing no later than January 19, 2018. [#34]. On January 19, 2018, Defendant submitted a "Response" to the Motion for Protective Order[3] [#35] and Ms. Mize submitted a Response to the Motion for Sanctions [#36]. Defendant submitted a Reply to the Motion for Sanctions on January 20, 2018. [#37]. These Motions are now ripe for review.

## LEGAL STANDARDS

### I. Rule 26

***Rule 26(b)(1).*** Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* In considering whether the discovery sought is

---

[3] Though filed on the docket as a Response to the Motion to Quash, Defendant's filing was actually captioned "Defendant's Motion for Sanctions, Pursuant to F.R.C.P. Rule 37(d)." [#35]. Including a motion within a response or reply to an original motion is not proper under D.C.COLO.LCivR 7.1(d), and this court did not grant Defendant leave to do so. Therefore, to the extent that Defendant makes a request for sanctions (which is not clear from the body of the paper) or seeks to have the court compel Plaintiff to supplement her responses to written discovery [#35-1], this court will not entertain such request in the context of the Motion for Protective Order. To the extent that Defendant requests that the court compel Plaintiff to respond to specific requests for production contained in the Notice of Deposition, such relief is intertwined with the court's resolution of the Motion for Protective Order. However, this court is disinclined to undertake *sua sponte* an analysis of each of Defendant's written discovery requests, as they are not properly before this court. The court does expect, however, that Plaintiff will be mindful of her obligations under Rule 26(e) to supplement her discovery responses in light of the court's rulings herein.

4

proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of discovery." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

***Rules 30 and 26(d)(3).*** Rule 30(a) provides that a party may take an oral deposition of its adverse party without leave of court. Fed. R. Civ. P. 30(a). Rule 26(d)(3) addresses the sequence of discovery and provides that "[u]nless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: … methods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3).

## II. Rule 37

Rule 37 serves as the mechanism for enforcing compliance with discovery obligations and, among other things, allows the court to compel a party to respond to proper discovery requests—whether deposition questions, interrogatories, requests for production, or requests for admissions. Fed. R. Civ. P. 37(a)(3)(B). Rule 37(d) also permits this court, upon motion, to sanction a party for failing to appear for her own deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Permissible sanctions include reasonable expenses, including attorney's fees, unless the failure was substantially justified or other circumstances make the award of fees unjust. Fed. R. Civ. P. 37(d)(3). It is also well established that the party seeking to invoke work product immunity or attorney-client privilege has the burden to establish the applicability of the immunity/privilege. *See, e.g.*, *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984).

## II. Privileges

Because the court's subject matter jurisdiction arises from federal law, federal common law with respect to privileges governs in this action. *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 636 (D. Colo. 2012).

***Attorney-Client Privilege.*** Under federal common law, the attorney-client privilege arises (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection is waived. *Id.* (citing *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006)).

***Work Product Doctrine.*** In all federal cases, the work product doctrine is governed by a uniform federal standard embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

*Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 (10th Cir. 1998). Rule 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

## ANALYSIS

### I. Motion for Protective Order

As part of the notice of deposition to a party opponent, a party may request under Rule 34 the production of documents and tangible things at the deposition. Fed. R. Civ. P. 30(b)(2). Therefore, Defendant was permitted to request that Ms. Mize bring certain documents to her deposition. Under this District's Local Rules of Civil Practice, pending resolution of a motion for protective order, the discovery to which the motion or request is directed "shall be stayed" unless otherwise ordered. D.C.COLO.LCivR 30.2(a). The Local Rule also specifies that a non-prevailing party may be subject to an award of expenses, fees, and costs under Rule 37(a)(5) of the Federal Rules of Civil Procedure. *Id.*

#### A. Relevance and Proportionality

Before this court considers whether any information or documents are protected from disclosure, it first considers whether the topics set forth in the Amended Notice of Deposition are relevant and proportional to the needs of this case. Certain requests, such as Request Nos. 1, 2,

7

3, 7, and 8 are relevant, as they seek evidence related to Ms. Mize's contact with and/or use of the facilities at issue in this action. Request Nos. 4, 5, and 8 similarly seek non-privileged information regarding communications between Ms. Mize and third parties that relate to the Complaint filed in this action and the underlying facts supporting Ms. Mize's cause of action. [#31-1 at 3]. But Request Nos. 4, 5, and 8 are also specifically directed at the production of any agreements and communications between Ms. Mize and Litigation Management. *See* [*id.*].

At oral argument, Defendant conceded that any agreement between Ms. Mize and Litigation Management was not necessarily relevant to her claims of disability discrimination under the ADA, but that it was relevant to a greater "fraud on the court" being perpetuated by Plaintiff. In its Response, Defendant argued that it sought Ms. Mize's agreement with Litigation Management because of its impact upon Ms. Mize's credibility. [#35 at 12]. Defendant points to Plaintiff's response to Interrogatory No. 11, which requested "DESCRIBE IN DETAIL how YOU learned about LitMan and/or ADA Equality." [#35-1 at 12]. Plaintiff expressly and unequivocally denied knowing "LitMan," *i.e.*, Litigation Management [*id.*], but at oral argument, Plaintiff's counsel conceded that she was working with Litigation Management. Further, in her Affidavit submitted in conjunction with oral argument, Ms. Mize attests under oath that "Litigation Management and Financial Services assists me in the litigation of Americans with Disabilities Act (ADA) lawsuits. Its staff is made up of lawyers and paralegals." [#34-7 at ¶ 7]. And Ms. Mize goes on to attest that she communicated with Litigation Management. [*Id.* at ¶¶ 8–9]. Like Defendant, this court finds Ms. Mize's unequivocal misstatement in her Response to Interrogatory No. 11 particularly troubling in light of the record now before the court, given Ms. Mize and her counsel's discovery obligations under the Federal Rules of Civil Procedure.[4]

---

[4] Rule 26(g) requires that every discovery request, response, or objection be signed by at least one attorney of record, and certified that to the best of the person's knowledge, information, and

8

As an initial matter, the Court of Appeals for the Tenth Circuit ("Tenth Circuit") and courts within the Circuit consistently hold that allegations of nondisclosure, misstatements, or even perjury in pretrial discovery are insufficient to satisfy the standard for fraud on the court. *See, e.g.*, *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985); *Clark v. Lavallie*, No. CIV. 96-CV-00823-PSF, 2007 WL 485225, at *2 (D. Colo. Feb. 12, 2007) (holding that even if defendant's declarations were false, it would not satisfy the standard for fraud on the court); *Chon v. United States*, No. 2:01-CR-487 TS, 2012 WL 3528047, at *3 (D. Utah Aug. 14, 2012). Thus, if Defendant's only theory was that Ms. Mize lied in her Response to Interrogatory No. 11, that basis would likely not be, in and of itself, sufficient to establish the relevance of Defendant's demand for the agreement and communications between Plaintiff and Litigation Management. And unlike the cases where courts have compelled production of the plaintiff's agreements with litigation management services because the plaintiff has attempted to proceed *in forma pauperis*, Plaintiff paid the full filing fee in this action. *Compare Frederick v. Panda No. 1*, No. 17-cv-00420-WJM-KMT [ECF No. 2] *and Carton v. Carroll Ventures, Inc.*, No. CV 17-0037 KG/SCY, 2017 WL 4857447, at *1 (D.N.M. Oct. 26, 2017) *with* [#1].

Nevertheless, the record now before the court also presents bigger issues than improper conduct in discovery (though serious and sanctionable, in and of themselves). While the court concludes that the agreement and communications between Plaintiff and Litigation Management may be of some relevance to Ms. Mize's credibility, the agreement and communications between Plaintiff and Litigation Management are more significant to the issues briefly identified by

---

belief formed after a reasonable inquiry that it is complete and correct at the time it is made; consistent with these Rules; and not interposed for any improper purpose. Fed. R. Civ. P. 26(g)(1). Rule 33 specifically requires that interrogatories be answered by the party to whom they are directed, answered under oath, and signed by the person who answers them, in this case, Ms. Mize. Fed. R. Civ. P. 33(b)(1)(A), (b)(3), and (b)(5).

Defendant,[5] including when Ms. Mize visited SaWaRa Sushi and her alleged injury-in-fact. [#35 at 6]. Those facts bear on Plaintiff's standing to bring this action, *see Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), and, in turn, this court's subject matter jurisdiction—an issue that this court has an independent obligation to consider even if no party raises it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 1240, 1244, 163 L.Ed.2d 1097 (2006); *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

Equally significant, this court has inherent authority to remedy a fraud on the court and, accordingly, to allow discovery into alleged fraud on the court. "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Parkview Gardens Bldg. Owners Ass'n v. Owners Ins. Co.*, No. 16-CV-2673-WJM-CBS, 2017 WL 3288313, at *5 (D. Colo. May 3, 2017) (internal brackets and quotation marks omitted) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). Mere allegations of fraud on the court would be insufficient to persuade this court that discovery into the relationship between Ms. Mize and Litigation Management is proper. But at this juncture, the court is faced with more than unsubstantiated allegations. Instead, the court is presented with evidence that Ms. Mize affirmatively misrepresented not knowing or hearing of Litigation Management when she signed her Responses to Defendant's Interrogatories on December 15, 2017, despite having signed an agreement with Litigation Management effective November 1, 2016. *Compare* [#35-1] *with* [#34-2]. The agreement between Ms. Mize and

---

[5] Defendant also raises arguments regarding Plaintiff's failure to provide any evidence that she is disabled, other than her own affidavit. [#35 at 6–7]. While perhaps a valid point, it is misplaced as an argument to justify Request No. 2 that seeks "any and all documents, photographs, and/or other evidence demonstrating Plaintiff's presence at SaWaRa Sushi in Castle Rock, Colorado on November 29, 2016." *Compare* [*id.*] *with* [#31-1 at 3]. Indeed, none of the requests contained in the Amended Notice of Deposition appear directed at Plaintiff's disability status. [#31-3].

Litigation Management discussed in detail below reveals that Litigation Management, not Plaintiff, appears to control the actions in this lawsuit. The agreement purports to limit Ms. Mize's ability to "discontinue the Claims with[out] the prior consent of [Litigation Management]" [#34-2 at 3], and prohibits Ms. Mize from settling the case without prior consent of Litigation Management and requires Ms. Mize to settle if so directed by Litigation Management [*id.* at 6].

Ms. Mize has failed to appear at her deposition, and has failed to present this court with any medical evidence that she was unable to attend. In the face of requests for her to produce documents or photographs that evidence her presence at SaWaRa, Ms. Mize is unable to point to any such evidence. [#31-1 at 2; #35 at 6]. The *Carton* court even described the Litigation Management funding model as a "carnival shell game," 2017 U.S. Dist. LEXIS 107135, at *35 (D.N.M. July 10, 2017), and ultimately dismissed the case under 28 U.S.C. § 1915(e)(2) as "malicious" and "filed in bad faith primarily for the purpose of coercing settlements." *Carton*, 2017 WL 4857447, at *3. Though Defendant has not moved for dismissal based on fraud on the court,[6] these facts persuade this court that at least some limited discovery regarding the relationship between Plaintiff and Litigation Management is relevant. Finally, Ms. Mize has failed to persuade this court with any evidence that producing such information and documents would not be proportional under Rule 26(b)(1).

---

[6] Courts in this District have found that dismissal is appropriate based on fraud on the court, *see McMillian v. Metal Building Servs.*, Civil Action No. 17-cv-00164, [ECF No. 53 at 1–2] (D. Colo. Jan. 25, 2018) (citing *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002)).

11

B.     Applicability of Attorney-Client Privilege & Work Product Doctrine

In her Motion for Protective Order, Ms. Mize generally invokes the attorney-client privilege and the work product doctrine to avoid producing documents.[7] [#31]. Such a general invocation is improper under the Federal Rules of Civil Procedure. Rule 26(b)(5) expressly states that:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must:
>
> (i)     expressly make the claim; and
>
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Rule 34, which is incorporated by reference through Rule 30(b)(2), specifically requires a responding party "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). In addition, Rule 34(b)(2)(C) provides that objections must state whether any responsive materials are being withheld on the basis of that objection, and an objection to only part of a request must specify the part and allow for inspection or production of the part not subject to the objection. Fed. R. Civ. P. 34(b)(2)(C). None of these prerequisites were satisfied by Plaintiff's Motion for Protective Order. Though it appeared that Ms. Mize sought a general protective order against any production through the Motion, her counsel conceded at oral argument that many of the topics did not contemplate any protected communication at all. For instance, Ms. Mize failed to

---

[7] Though presumably Ms. Mize also objects to giving testimony about these same issues at her deposition, as discussed below, the Motion for Protective Order is only directed at the request for production of documents associated with the Amended Notice of Deposition.

explain how documents reflecting purchases at SaWaRa on November 29, 2016 could be privileged. [#31-1 at 3]. Accordingly, to the extent that Plaintiff has generally asserted a blanket attorney-client privilege or work product doctrine, this court finds no basis for upholding such invocation.

At oral argument, however, Ms. Mize produced a privilege log. [#34-1]. That privilege log also falls far short of the requirements of the Federal Rules. It does not contain any specific information regarding the sender or recipient of the communication; nor does it describe the nature of the documents or communications sought to be privileged or protected. [*Id.*]. The descriptions are non-existent in the case of Exhibit A, which is the agreement between Ms. Mize and Litigation Management entered on November 1, 2016, and neither the description nor the date is privileged. [#34-2]. In one case, Document D that is described as "Correspondence," is a public court order with no associated communication and is, under any circumstances presented, not privileged. [#34-5]. The other documents constitute an undated "Audit" related to Defendant that has no explanation as to who conducted the audit or when it was conducted [#34-3]; an undated index of materials related to the action, again with no indication of who prepared such index or for what purpose it was prepared [#34-4]; and correspondence between Gary Mize, on one hand, and Emily Branch, an individual associated with Litigation Management, Fabian Zazuelta, purportedly an in-house counsel for Litigation Management, and Sydney Rogers, a paralegal associated with Litigation Management. [#34-6]. Ms. Branch, Mr. Zazuelta, and Ms. Rogers have not appeared in this action. Ms. Coulter does not appear on any of these communications, and when asked at oral argument, could not confirm nor deny whether she was ever employed by Litigation Management though she conceded that she was not currently employed by Litigation Management.

13

***Attorney-Client Privilege***. In her Affidavit, Ms. Mize states under oath that "it has been [her] understanding that [the attorney-client privilege] exists with regard to Litigation Management and Financial Services, as I would communicate with the legal staff about the status of my cases, discuss strategy and status of ADA matters and relied upon their legal assistance and advice." [#34-7 at ¶ 8]. She further states that "[w]hen I communicated with Litigation Management and Financial Services, it was my expectation and intention that the communication was private, confidential and subject to the attorney-client privilege." [*Id.* at ¶ 9]. But a review of the agreement between Ms. Mize and Litigation Management belies such statements, and resolves the issue of the applicability of the attorney-client privilege.

The touchstone of the privilege is a relationship between an attorney and a client. Ms. Mize produced no engagement letter from Litigation Management, and fails to produce any evidence that any of the individuals with whom she purportedly had contact with are attorneys. Indeed, her Affidavit fails to identify specific individuals with whom she conferred but, rather, generically indicates that Litigation Management's staff is "made up of lawyers and paralegals." [#34-7 at ¶ 7]. And "the status of her case" or the "strategy and status of ADA matters" may be privileged, but are not necessarily so. Significantly, the agreement between Ms. Mize and Litigation Management repeatedly repudiates the existence of an attorney-client relationship. Paragraph 12 of the agreement expressly states: "**[Litigation Management] is not entitled to or obligated to provide legal advice to Claimant. The preparation and conduct of litigation which is funded by Company is the responsibility of Claimant and Claimant's lawyer**." [#34-2 at 2 ¶ 12 (emphasis added)]. The following paragraph then provides: "**This Agreement is limited to providing funding to Claimant and Claimant's attorney for legal services**." [*Id.* at 2–3 ¶ 1 (emphasis added)]. In describing Litigation Management's duties, the agreement

14

unequivocally disclaims any privileged relationship: "**[Litigation Management] shall not provide legal advice to Claimant**." [*Id.* at 4 (emphasis added)]. The agreement further references a separate "attorney-client agreement." [*Id.* at 5]. There simply is no attorney-client relationship upon which to base any claim of privilege and Ms. Mize's conclusory statements in her Affidavit do not transform the relationship into one that it is not.

In addition, most of the documents reflected on the privilege log are not communications for the purposes of obtaining legal advice. The agreement is akin to an engagement or retention letter, which is generally not privileged. *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir.1990) (holding that fee arrangements are generally not privileged and remanding for the lower court to determine if the fee contracts at issue contained confidential information along with unprotected fee information). As discussed above, the agreement between Plaintiff and Litigation Management not only fails to contain any legal advice, but specifically disclaims any ability for Litigation Management to provide any legal advice to Ms. Mize. The audit and index do not appear to be any kind of communication conveyed from an attorney to a client or vice versa.

Finally, there is some evidence of intentional waiver of any attorney-client privilege in this case. The agreement expressly requires Ms. Mize to "release its lawyer from any duties of confidentiality as concerns communication and disclosure between the lawyer and Company of information relating to the Claims" and to inform Litigation Management "via its lawyer on the status of proceedings and shall send to the Company, promptly and without need for Company request, of new circumstances which have come to light and which have an impact on the assessment of the merits or validity of the Claims *or the legal risk*." [#34-2 at 3–4 (emphasis added)]. Ms. Mize has failed to point this court to any authority that supports privilege in this

type of tripartite relationship. In light of these findings, this court concludes that Plaintiff's reliance on the attorney-client privilege as the basis for withholding any information exchanged between her and Litigation Management is misplaced. *See* [#34-1].

*Work Product Doctrine.* The work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). Described as an "intensely practical" doctrine, the Supreme Court explained that the Rule extends "the doctrine to protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* The agreement between Ms. Mize and Litigation Management may have been prepared in anticipation of litigation, but reveals no legal advice or mental processes of her attorney about the litigation. Instead, the agreement is a "by-product" of the fact of, at best, a business relationship between Litigation Management and Ms. Mize. *Cf. Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 103 (S.D.N.Y. 2009).

Arguably, however, the document entitled "Audit" might be protected by the work product doctrine if there was any evidence at all that it was prepared in anticipation of litigation for Plaintiff by Ms. Mize, her attorney, or her agent.[8] *See e.g.*, *Equal Rights Ctr. v. Post Properties, Inc.*, 247 F.R.D. 208, 212 (D.D.C. 2008). But there is no such evidence in the record. The "Audit" itself fails to contain a date, or any indication of who actually prepared the document or took the photographs contained therein. [#34-3]. Ms. Mize fails to address the document in her Affidavit. [#34-7]. And attorney argument, without more, does not demonstrate that the document is entitled to work product protection. *Pensacola Firefighters' Relief & Pension Fund Bd. of Directors v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No.

---

[8] It is not clear to this court that the "Audit," or some form of it, has not already been produced to Defendant. *See* [#35 at 6].

3:09CV53/MCR/MD, 2010 WL 4683935, at *6 (N.D. Fla. Nov. 10, 2010). It would be improper for this court to essentially infer the work product doctrine when Plaintiff has failed present evidence to establish its applicability. Indeed, Ms. Mize has been represented by counsel since the inception of this action, and there is no justification for applying a liberal standard to her papers. *United States v. Davis*, 622 F. App'x. 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). The same analysis applies to the Index. [#34-4].

The email correspondence between Gary Mize and the representatives of Litigation Management fall in a slightly different category. It is clear that these communications were prepared in anticipation of litigation, though they were not prepared or exchanged with Plaintiff's counsel. But "agents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself." *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1184 (10th Cir. 2013) (quoting *Nobles*, 422 U.S. at 238–39 ("It is therefore necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.")). The Rule itself indicates that such representatives can be an "attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3). Assuming without deciding that Litigation Management is an agent or representative of Plaintiff (which is not a foregone conclusion based on the record before the court), the inquiry then turns to whether the correspondence is otherwise discoverable under Rule 26(b)(1) and whether Defendant has

shown substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

As discussed above, this court has found that communications between Plaintiff (and her representatives) with Litigation Management are relevant because they may reveal facts pertaining to Plaintiff's standing to bring this action and to whether Plaintiff has perpetuated an actionable fraud on the court. Accordingly, this court finds that there is a substantial need for the production of the communications between Plaintiff and Litigation Management, and that Defendant cannot obtain the substantial equivalent by other means. Fed. Civ. P. 26(b)(3)(ii).

For these reasons, this court hereby **DENIES** the Motion for Protective Order and **ORDERS** that in conjunction with her deposition, Ms. Mize produce any and all documents responsive to the requests. The court further **ORDERS** the Clerk of the Court to **UNRESTRICT** the documents identified in the privilege log [#34-2 through #34-6]. The issues of monetary sanctions is considered below.

## II. Motion for Sanctions

As mentioned above, Plaintiff's Motion for Protective Order is only directed at the document requests included in the Amended Notice of Deposition, not the deposition itself. [#31]. It is undisputed that Plaintiff did not appear for her deposition on the date properly noticed, nor did she provide adequate time for such deposition to be rescheduled in a manner that avoided expense to Defendant. In such circumstances, Rule 37(d) provides that a court may sanction a party in any manner delineated under Rule 37(b)(2)(A)(i)–(iv), but "must" require the party refusing to act, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d)(3). Similarly,

Rule 26(c)(3) and Rule 37(a)(5) contemplate that a non-prevailing party and/or its counsel "must" pay the prevailing party's reasonable expenses incurred in making the motion, including attorney's fees. All the Rules require that the party and/or deponent have an opportunity to be heard on the issue.

Through her Affidavit, Ms. Mize indicates that she is unable to work and that she did not attend her deposition because, on December 20, she was "suffering exacerbated and heighten [sic] symptoms of multiple sclerosis, as well as elevated blood pressure and heart rate and light headedness." [#34-7 at ¶ 3]. She further attests that she was "also having cognitive challenges due to stress and anxiety" and that she was "shaking, pale and unable to control [her] limbs." [*Id.*]. Ms. Mize presents no medical documentation of her condition,[9] but at oral argument, her attorney represented that Ms. Mize did not seek any immediate medical treatment. Contrary to Defendant's assertion in its Motion for Sanctions, Ms. Mize denies that she ever said or indicated that she would never sit for a deposition. [*Id.* at ¶ 5]. And though this court acknowledges Defendant's offer to take Ms. Mize's deposition at either her home or at the hospital, neither of those accommodations would address the underlying medical issue that Ms. Mize reports.

In consideration of Ms. Mize's statements under oath, this court finds that Plaintiff's medical condition constitutes substantial justification in this instance to avoid the payment of Defendant's attorney's fees and costs, but Ms. Mize and/or Ms. Coulter will be held responsible for the expenses associated with the court reporter. In addition, the court **ORDERS** that Ms. Mize be made available for deposition, at a mutually agreeable location, date, and time, no later than **March 16, 2017**. To the extent that a mutually agreeable location cannot be established, the deposition may occur in the jury room of the undersigned Magistrate Judge.

---

[9] While it will accept Ms. Mize's statements under oath regarding her medical condition for the purpose of the instant Motion for Sanctions, the court advises Ms. Mize that it expects that any future claim of medical emergency will require corroboration by a medical professional.

19

**In addition, Ms. Mize is specifically advised that failure to cooperate in discovery, including but not limited to, appearing for her deposition, properly producing documents, and/or properly supplementing her discovery responses may lead to further sanctions. These sanctions can include the dismissal of this action with prejudice, and the award of reasonable expenses, including attorney's fees and costs.**

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion to Quash Subpoena Duces Tecum [#31] is **DENIED**;

(2) Plaintiff Vicki Mize will appear for deposition, at a mutually agreeable location, date, and time no later than **March 16, 2018** and produce all documents responsive to the requests identified in the Amended Notice of Deposition [#31-1];

(3) Defendant Kai, Inc.'s Motion for Sanctions [#32] is **GRANTED IN PART and DENIED IN PART**;

(4) Plaintiff must pay all expenses associated with the court reporter for her December 20, 2017 deposition;[10]

(5) The Clerk of the Court is **DIRECTED to UNRESTRICT** the documents identified in the privilege log [#34-2 through #34-6];

(6) The deadline for filing dispositive motions is **EXTENDED** from January 17, 2018 to **April 6, 2018**; and

(7) The Final Pretrial Conference currently set for March 22, 2018 is **VACATED** and **RE-SET** to **July 10, 2018 at 11:00 a.m**.

DATED: February 23, 2018                                                           BY THE COURT:

                                                                                 s/Nina Y. Wang_____
                                                                                 United States Magistrate Judge

---

[10] The Parties should use their best efforts to stipulate to the amount of expenses associated with the court reporter. To the extent that they cannot stipulate to the amount, Defendant will file a motion for an award of expenses no later than March 16, 2018. **The Parties are advised that the non-prevailing party on such motion may be required to bear the reasonable expenses associated with the filing and litigation of any such motion.**